FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2016 MAR 31 AM 10: 10

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

LESLEY DAVIDSON,

  Plaintiff,

vs.

Case No.: 3:16-cv-383-J-25JRK

CITY OF JACKSONVILLE, FLORIDA,

  Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Lesley Davidson, sues the City of Jacksonville and alleges as follows:

### Introduction

1. This is an action by a female United States Citizen against an employer for violations of Plaintiff's rights under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et. seq.* for discrimination on the basis of gender.

### Jurisdiction and Venue

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as the cause of action arose in this district.

### Parties

4. Plaintiff Lesley Davidson is an adult citizen of the United States, residing in Jacksonville, Duval County, Florida, and was at all times material hereto, an employee of Defendant the City of Jacksonville, Florida. Plaintiff's gender is female.

1

5. Defendant the City of Jacksonville ("The City") is a municipal corporation organized under the laws of Florida. The City employs in excess of 15 employees.

6. At all times relevant hereto, the City was an employer under 42 U.S.C. § 2000e.

### Facts

7. In September 2008, Plaintiff was appointed to the position of Better Jacksonville Plan Senior Project Manager.

8. Plaintiff entered into a reversion agreement that allowed her to go back to an equal position with equal pay in the event that she reverted from the Senior Project Manager position, which offered a salary of $99,999.96.

9. In January, 2010, Plaintiff received a letter indicating that she was being reverted from the Senior Project Manager position.

10. During her reversion meeting, a representative of the City's HR department, Diane Moser, explained to Plaintiff that as part of her reversion agreement, Plaintiff could be placed in the open position of Engineer Manager, which would be revised by one pay grade down to meet the pay grade of her previous position, which she had prior to her appointment to the Senior Project Manager Position.

11. While, per her reversion agreement, the revised Engineer Manager Position would not result in a loss of wages from her position prior to being appointed Senior Project Manager, she was nevertheless qualified for the Engineer Manager Position without the reduction in pay grade.

12. Plaintiff accepted the Engineer Manager position, and reported to Terri Theriault, who was the chief of the Right of Way and Grounds Maintenance Division.

13. While Plaintiff had accepted the position of Engineer Manager, the City changed Plaintiff's title on Plaintiff's timesheets to her old title of Building Construction Trades Administrator, which was of lower rank than the Engineer Manager Position and that position no longer existed in the City.

14. Plaintiff repeatedly asked the City's HR department to correct her title, but Plaintiff was simply told to "hang on until things calmed down."

15. Further, Mr. Theriault told several of Plaintiff's colleagues that the City had ordered him not to give Plaintiff any work in the hopes that Plaintiff would quit.

16. Shortly thereafter, the second Engineer Manager position at the City became available.

17. On August 30, 2011, Plaintiff told Mr. Theriault that if her job title was not corrected, she would apply for the second Engineer Manager position.

18. On or about that date, Plaintiff sought to apply for the open Engineer Manager position, but was told that she would not be allowed to do so.

19. On October 1, 2011, the City changed Plaintiff's job title to "Professional Engineer" without her approval or notification, which was also a position beneath the Plaintiff's paygrade.

20. On October 2, 2011, the City changed Plaintiffs' job title back to that of Building Construction and Trade Administrator.

21. When Plaintiff asked when her job title would be changed to accurately reflect her position, she was told that she would have to wait until other employees who were demoted or reverted following the election of Mayor Alvin Brown were placed, even though she had been reverted from her appointed position two years before them.

22. On May 15, 2012, Plaintiff submitted her resume to the new director of the Public Works Department, Jim Robinson, to apply for the remaining Engineer Manager Position, or another position that fit her experience and institutional knowledge.

23. On or about that date, rather than giving her the City Manager position, the City reclassified Plaintiff's position to that of "Professional Engineer," which resulted in a $20,000 reduction in salary and also entailed performing more work.

24. The City's refusal to give Plaintiff the position to which she was entitled under her reversion agreement, as well as their actions demoting Plaintiff to Senior Project Manager, were taken on account of Plaintiff's gender.

25. Other similarly situated male employees who were reverted or demoted from their positions at the City were not denied the job titles in their reversion agreement or demoted to a lower pay-grade following their reversion.

26. For example, Plaintiff's male colleague Robert Baughman was demoted from his appointed position, and the City made a position for him that matched his pay grade.

27. Additionally, Plaintiff's male colleague Jim Manning had been appointed to a position with no reversion rights, yet when he was removed from that position, the City created a new position for him that matched his paygrade.

28. Furthermore, Plaintiff's male colleague Tom Goldsbury was reverted to one of the Engineer Manager positions immediately following his removal from his appointed position, even though he held similar qualifications to those of the Plaintiff and had lost his appointed position over two years after Plaintiff had been reverted from hers.

29. Additionally, the other Engineer Manager position, was filled by Steve Long, who was promoted up by one paygrade to fill the position.

30. Steve Long is a male employee who was less qualified for the Engineer Manager position than Plaintiff. Indeed, both Plaintiff and Mr. Long applied for Plaintiff's previous Senior Project Manager position, and Plaintiff was chosen over him for that position.

31. When Plaintiff applied for the Engineer Manager Position, the director of her division, Jim Robinson told her that the City was going to give the position to Mr. Long, because he was a "company man".

32. Additionally, unlike her male colleagues who were given an Engineer Manager position immediately following their reversion, Plaintiff holds a master's degree, serves as one of 30 State of Florida Urban Search and Rescue Structural Specialists, and has experience with bridge design.

33. The above-described conduct of the City was caused and motivated by its desire to terminate Plaintiff's employment because of her gender.

34. All conditions precedent have been performed or have occurred in that Plaintiff filed a timely administrative charge of discrimination, and this action is filed within ninety (90) days of Plaintiff's receipt of a notice of right to sue from the United States Equal Employment Opportunity Commission.

## COUNT I
## TITLE VII: GENDER DISCRIMINATION

35. Paragraphs 1-33 above, are hereby realleged and incorporated by reference herein.

36. Defendant took an adverse employment action against Plaintiff by depriving her of the title of Engineer Manager and demoting her to the position of Professional Engineer.

37. Defendant's adverse employment action against Plaintiff was taken because of Plaintiff's gender, in violation of Title VII of the Civil Rights Act of 1964.

38. Alternatively, Plaintiff's gender was a motivating factor of the City's decision and the City actually relied on Plaintiff's gender in making their decision to take adverse employment action against Plaintiff.

39. As a result of the foregoing, Plaintiff has suffered damages and other effects of the above-described employment action, including, but not limited to, pain and suffering, emotional distress, and loss of employment.

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Declare that the conduct set forth above violates Plaintiff's rights under Title VII of the Civil Rights Act of 1964;

b. Direct the Defendant to reinstate Plaintiff to the Engineer Manager position and correct her official job title accordingly, or in the alternative, award Plaintiff front pay until she can be placed in a position and salary that Plaintiff would have been but for Defendant's unlawful acts;

c. Award Plaintiff actual and compensatory damages;

d. Award Plaintiff punitive damages;

e. Award Plaintiff reasonable attorney's fees and costs; and

f. Grant such other and further relief as the Court deems just and proper.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT

40. Paragraphs 1-33 above are hereby realleged and incorporated by reference herein.

41. Defendant's adverse employment action against Plaintiff was taken because of Plaintiff's gender, in violation of the Florida Civil Rights Act.

42. Alternatively, Plaintiff's gender was a motivating factor of the City's decision and the City actually relied on Plaintiff's gender in making their decision to take adverse employment action against Plaintiff.

43. As a result of the foregoing, the Plaintiff has suffered damages and other adverse effects of the above-described employment action, including, but not limited to, pain and suffering, emotional distress, and loss of employment.

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Declare that the conduct set forth above violates Plaintiff's rights under the Florida Civil Rights Act;

b. Direct the Defendant to reinstate Plaintiff to the Engineer Manager position and correct her official job title accordingly, or in the alternative, award Plaintiff front pay until she can be placed in a position and salary that Plaintiff would have been but for Defendant's unlawful acts;

c. Award Plaintiff actual and compensatory damages;

d. Award Plaintiff punitive damages;

e. Award Plaintiff reasonable attorney's fees and costs pursuant to §760.11(5) Fla. Stat (2013); and

f. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

DATED this _____ day of March, 2016.

Respectfully submitted,

/s/ [signature]

Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 055712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone: (904) 356-9661
Facsimile: (904) 356-9667
Email: sheplaw@att.net
**COUNSEL FOR PLAINTIFF**

ldh[Davidson.lesley.complaint]